AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. |
| Omar Arriojas | ) | 2:23-mj- 1012-TRR |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __January 18, 2023__ in the counties of __Lee__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 554 | Unlawfully Exporting or Attempting to Export Goods from the United States |

This criminal complaint is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

_Lamont Smith_
Complainant's signature

Resident Agent in Charge Lamont Smith, ATF
*Printed name and title*

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d).

Date: 1/20/2023

_[signature]_
*Judge's signature*

City and state: Fort Myers, FL      TIMOTHY R. RICE, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Lamont Smith, being duly sworn, state as follows:

## INTRODUCTION

1.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), U.S. Department of Justice, and have been so employed since February of 2001. Currently, I am assigned to the Fort Myers Field Office as the Resident Agent in Charge (RAC). Prior to being employed with ATF, I was a Border Patrol Agent with the United States Border Patrol from August 1995 to February 2001 and was assigned to the Border Patrol Station in Tucson, Arizona. I am a graduate of the Federal Law Enforcement Training Center (Basic Criminal Investigator Program), the ATF National Academy, and the United States Border Patrol Academy. My duties as an ATF Special Agent are to investigate violations of federal law relating to alcohol, tobacco, firearms, explosives, and controlled substances.

2.      During my career with ATF, I have conducted general investigations targeting violent criminals, gangs, and organized criminal groups that were violating federal firearms and explosive statutes as well as other violations of the United States Code. From June 2008 to December 2013, I was assigned to the overseas ATF Offices in Monterrey, Mexico and Bogota, Colombia to assist both U.S. and foreign law enforcement officials in combating the illegal trafficking of firearms from the United States to Latin America. One of my primary responsibilities while working overseas was to manage international firearms trafficking investigations to reduce the flow of U.S. sources firearms to Mexico and other Latin American countries. I developed and instituted programs to collect firearms data from the U.S. and Latin American countries to analyze to determine if U.S. sourced firearms were being trafficked to each

respective country. If it was determined that U.S. sourced firearms were being trafficked to the country, I worked closely with U.S. and foreign law enforcement officials to investigate and arrest the individual(s) and to dismantle the criminal trafficking organization(s) involved.

3. In the course of my duties as the RAC of the Fort Myers I Field Office, I continue to use the knowledge and experience I gained overseas to identify possible straw purchasers, firearm traffickers and firearm trafficking organizations. In this role, I have been investigating the suspected unlawful purchasing and exportation of firearms by Omar ARRIOJAS. This affidavit relates to that investigation.

4. The information in this affidavit is based on information I have obtained from firsthand observations, researching firearm purchase and multiple sale records, interviewing Federal Firearm Licensees (FFLs), interviewing witnesses, researching telephone and financial records, and/or receiving information from other sources including other federal law enforcement officers. This affidavit does not contain all information discovered during this investigation, rather only that believed necessary to provide probable cause for the requested criminal complaint.

## STATUTORY AND REGULATORY BACKGROUND

5. 18 U.S.C. § 554 prohibits a person from fraudulently or knowingly exporting or sending from the United States, or attempting to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States.

6. The Export Administration Regulations ("EAR") (15 C.F.R. Parts 730 – 774), as well as orders, licenses and authorizations issued thereunder, requires a person to apply for and obtain an export license from the Department of Commerce before

exporting certain commodities from the United States. The definition of "export" in 15 C.F.R. § 734.13 includes an actual shipment or transmission out of the United States, including the sending or taking of an item out of the United States, in any manner.

7. The EAR (15 C.F.R. § 736.2(b)(1)) provides that an individual cannot, without a license or license exception, export any item subject to the EAR to another country or reexport any item of United States origin if: (a) the item was controlled for a reason indicated in the applicable Export Control Classification Number ("ECCN"); and, (b) export to the country of destination required a license for the control reason as indicated on the Country Chart at part 738 of the EAR. The Department of Commerce, Bureau of Industry and Security ("BIS"), also maintained the Commerce Control List ("CCL") within the EAR (15 C.F.R. Part 774, Supplement 1), which identified commodities subject to the export licensing authority of BIS.

8. 15 C.F.R. Part 742 sets out the relevant CCL-based control policies of the United States. Specifically, 15 C.F.R. § 742.4 restricts the export of items that would make a significant contribution to the military potential of any other country or combination of countries that would prove detrimental to the national security of the United States. Similarly, 15 C.F.R. § 742.6 restricted the export of items in support of United States foreign policy to maintain regional stability. Additionally, 15 C.F.R. § 742.17 restricted the export of firearms to Organization of American States ("OAS") member countries, including Venezuela.

9. Firearms, including pistols, are classified under ECCN 0A501.a on the CCL, for reasons related to national security, regional stability, and firearms

convention. Therefore, a license is required under 15 C.F.R. §§ 742.4, 742.6, and 742.17 to export firearms from the United States to Venezuela.

10. In the application for an export license, an exporter is required to state, among other things, the nature of the commodity to be exported, the end recipient or user of the commodity, and the purpose for which the commodity was intended. The Department of Commerce considers these factors in determining whether the export of the commodity would further the security and foreign policy interests of the United States.

## PROBABLE CAUSE

11. In July 2022, I reviewed a weekly report from the ATF National Tracing Center (NTC), containing the results of specific queries against the Firearms Tracing System (FTS) of trace, multiple sale, and FFL Theft reports. During the review, I observed that ARRIOJAS, a Venezuelan national, had recently made six (6) multiple sale purchases totaling sixteen (16) firearms from different FFLs in the Fort Myers area. After reviewing the multiple sales in eTrace, I identified that ARRIOJAS was repeatedly buying the same make and model of 9mm pistols.

12. Based on the suspicious purchases and knowledge that Venezuela is a destination for trafficked firearms, I requested border crossing records for ARRIOJAS. According to the records, ARRIOJAS was granted residency as a United States legal permanent resident in 2005, but maintains his Venezuelan citizenship. Records show that he has frequently traveled to Venezuela since 2007, often staying months at a time. Records also identified that in February 2010, during an entry into the United States from Venezuela, ARRIOJAS was interviewed by an immigration officer. During the

interview, he stated to the officer that he lived in Venezuela and that he was coming to the United States on a business trip to purchase items to sell back in Venezuela.

13. From July 27, 2022, to October 24, 2022, I contacted at least eight (8) different FFLs in Cape Coral and Fort Myers. I inquired with store personnel to check their records to see if ARRIOJAS had made any firearm purchases from their business. I identified that ARRIOJAS has purchased at least fifty-six (56) firearms from September 14, 2018, to July 18, 2022, from the eight (8) FFLs, maintaining a pattern of buying multiple firearms of the same make and model. ARRIOJAS has also shown that he will buy the same make and model of a firearm from different FFLs within a few days' time.

14. Based on the comparison of information regarding ARRIOJAS' firearm purchases and his border crossing records, I identified a pattern since August 2021 of ARRIOJAS' arrival from Venezuela to the United States, followed by a spurt of firearm purchases within a three (3) to five (5) month period, then a departure back to Venezuela for several months, followed by the same pattern.

15. On December 22, 2022, I was contacted by Customs and Border Protection (CBP) officers regarding a seizure of ammunition on December 22, 2022, that was discovered during a border search of cargo at GLE Cargo, 7941 NW 68th Street, Miami, FL. The box containing the ammunition indicated that it had been sent by ARRIOJAS on December 21, 2022, and addressed to an individual named "J.L.M" at Calle Anzoategui, Casa # 30, Casco Central La Laguna, Puerto Piritu, Anzoategui, Venezuela.

16. CBP officers advised that the ammunition was found concealed inside the metal frame cover of a small wall-unit air conditioner, in niches found between the

air conditioner parts. The ammunition was also wrapped in black socks to further conceal it. Once removed from the air conditioner and from the black socks, CBP officers advised the ammunition seized consisted of the following: three (3) boxes of 10 rounds of Sellier & Bellot (S&B) 12 gauge 2 ¾, #1 Buck and 25 loose rounds of Federal 16 gauge.

17. Also found in the box was a plastic bag with a "Shoot Center" logo. Shoot Center is an FFL located at 1122 Del Prado Blvd S., Cape Coral, Florida. I had previously received information from Shoot Center personnel that ARRIOJAS has purchased firearms from the FFL in the past and that he had recently purchased 4 boxes of Sellier & Bellot (S&B) 12 gauge 2.75 #1 Buck on November 11, 2022.

18. GLE Cargo personnel advised that the box was picked up from ARRIOJAS at his residence of 4718 SW 20th Place, Cape Coral, FL 33914 by a truck driver on December 21, 2022, at approximately 1:46 P.M. GLE Cargo personnel also advised that they were not provided written notice that the shipment contained ammunition and that they have a strict policy prohibiting the shipment of firearms or ammunition. Photographs taken in connection with the above-described seizure are depicted below:

   



19. On January 10, 2023, I was contacted by the NICS Command Center advising that a NICS background check for ARRIOJAS was conducted for the purchase of handgun(s) by an FFL called ECP Outdoors. ECP Outdoors is located at 242 Pine Island Road, North Fort Myers, FL 33903 and based on previous contacts, I know that ARRIOJAS, since 2020, has purchased nineteen (19) firearms from the business.

20. On January 10, 2023, I contacted ECP Outdoors and spoke with the owner, J.S. J.S. advised that ARRIOJAS had come into his store on January 10, 2023, and purchased two (2) Ruger pistols, model EC9S, 9mm caliber, serial number 461-85044 and serial number 461-85047. J.S. advised that due to the wait on the NICS background check, ARRIOJAS decided to return another day to pick up the two (2) pistols.

21. On January 14, 2023, I was contacted by J.S. advising that ARRIOJAS came into ECP Outdoors and the two (2) above-described pistols were transferred to his possession without incident. J.S. also advised that ARRIOJAS came into the business with his nephew, R.P. and that R.P. also purchased a Ruger pistol, model EC9S, 9mm caliber, serial number 462-31822.

22. I have kept in weekly contact with GLE Cargo personnel regarding the receipt of any shipments from ARRIOJAS since the ammunition seizure by CBP

agents on December 22, 2023. Based on ARRIOJAS' recent firearm purchases from ECP Outdoors on or about January 10, 2023, I contacted GLE Cargo personnel and advised them that they should expect a shipment by ARRIOJAS in the next week.

23.  On January 17, 2023, I was contacted by GLE Cargo personnel and was advised that ARRIOJAS had texted GLE Cargo to schedule a pick-up on January 18, 2023, for two (2) boxes from his residence at 4718 SW 20th Place, Cape Coral, FL 33914.

24.  On January 18, 2023, I initiated a surveillance operation on ARRIOJAS' residence to observe the pick-up/transfer of any boxes from ARRIOJAS to GLE Cargo personnel for shipment to Venezuela. I parked in visual range of the residence and was able to observe a black van arrive at the residence and park in the driveway. I was able to observe the driver exit the van and walk to the front-door area of the residence and shortly thereafter, I observed ARRIOJAS and the driver, carrying between them, a large blue box from the area of the front door to the side of the van's sliding door. After a brief conversation between the ARRIOJAS and driver, ARRIOJAS entered his residence and the driver of the van drove away from the area.

25.  I was able to follow the van from the residence, contact the driver, and request that he pull the van over. The driver was able to pull into a shopping plaza parking lot near by the ARRIOJAS' residence. I requested that the driver show me the box that he had just picked up from ARRIOJAS. The driver complied, opened the van sliding door and showed me the box in question.

26.  I was able to observe a large Home Depot box, wrapped in clear blue cellophane and addressed to C.V. with a destination address in Venezuela of Pto. Piritu, Anz., telephone # 0412-832-0538. Two photographs of the box are depicted

below. Based on my investigation, I know that C.V. has been the recipient of three (3) previous shipments from ARRIOJAS in the past, with a different address, but the same telephone number.



27. On January 19, 2023, I met CBP officers at the GLE Cargo Warehouse, 7941 NW 68th Street, Miami, Florida, so that CBP officers could conduct a search of the box under CBP's border search authority.

28. A search of the box revealed a large used air conditioner along with several personal items such as shoes and other items. Also found in the box was a large black plastic bottle/container wrapped in clear green cellophane with "Omar Arriojas" written in black ink on it. A closer look at the bottle through the clear cellophane identified that the bottle was labeled as four (4) pounds of Ramshot Competition Clay Target Powder, further identified as a double-based smokeless powder that is primarily designed as a propellant charge for 12-gauge shotgun shells.

29. CBP officers conducted a further search of the used air conditioner by removing the metal frame cover. CBP officers were able to find hidden in niches between the air conditions parts, several items concealed in black socks, tinfoil or by

both. The concealment material was removed and the following items were observed and seized by CBP for the failure to obtain a license as required for export:

1) One (1) Ruger 9mm pistol, model EC9S, serial number 461-85044
2) One (1) Ruger 9mm pistol, model EC9S, serial number 461-85047
3) One (1) Ruger 9mm pistol, model EC9S, serial number 462-31822
4) Two (2) Ruger EC9S magazines
5) Three (3) unidentified pistol magazines
6) One (1) 50 round box of Aguila .38 special ammunition
7) One (1) 10 shotgun shell box of Winchester .410 ammunition

30. GLE Cargo personnel advised that they were not provided written notice that the shipment contained firearms, gunpowder, or ammunition and that they have a strict policy prohibiting the shipment of those types of items. Photographs of the box and its contents are depicted below.












31.   I reviewed a copy of the ATF Forms 4473, Firearms Transaction Records, that ECP Outdoors provided regarding ARRIOJAS' and R.P.'s recent firearms purchases from their store discussed earlier in this affidavit. I compared the Ruger pistol serial numbers of the firearms seized from the package to copies of the 4473, and confirmed that two (2) of the Ruger pistols found and seized from the box

sent by ARRIOJAS had the identical serial numbers of the two (2) pistols that ARRIOJAS purchased from ECP Outdoors, and that one (1) of the Ruger pistols found and seized from the box had the identical serial number of the pistol that R.P. had purchased from ECP Outdoors.

32. I have spoken with CBP officials who have confirmed that there is no record showing that ARRIOJAS ever applied for or obtained a license to export firearms to Venezuela nor has an Electronic Export Information (EEI) export declaration been submitted to CBP electronically through the Automated Export System (AES) as required by federal law.

## CONCLUSION

33. Based upon the information set forth above, I respectfully submit that probable cause exists to charge Omar ARRIOJAS with Unlawfully Exporting or Attempting to Export Goods from the United States, in violation of 18 U.S.C. § 554.

*Lamont Smith*
Lamont Smith
Resident Agent in Charge
Bureau of Alcohol, Tobacco, Firearms and Explosives

Affidavit submitted to me by reliable electronic means and attested to me as true and accurate by telephone other reliable electronic means consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) before me this 20th day of January, 2023, in Fort Myers, Florida.

Timothy R. Rice
United States Magistrate Judge